NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 29, 2008
Decided February 15, 2008

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-1845

| | |
|---|---|
| MEI MEI LIU,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A95 928 960 |
| MICHAEL B. MUKASEY,<br>    *Respondent.* | |

### O R D E R

Mei Mei Liu, a Chinese citizen, petitions for review of the order of the Board of Immigration Appeals denying her motion to reopen her claims for asylum, withholding of removal, and relief under the Convention Against Torture.  Liu originally claimed that she feared being persecuted by the Chinese government because her parents are Falun Gong members.  The BIA affirmed the immigration judge's denial of her claims, but more than two years later, Liu moved to reopen the proceedings based on "changed personal circumstances."  Specifically, she claimed that she was pregnant and unmarried, and if she returned to China government authorities would force her to abort her pregnancy or undergo sterilization.  The BIA denied the motion as untimely.  Liu now argues that she is entitled to further proceedings based on changed conditions in China.  Because the BIA did not abuse

its discretion in finding that Liu had shown only a change in personal circumstances, rather than a change of conditions in China, we deny the petition for review.

**Background**

Liu is a 29-year-old native of the Fujian Province in the People's Republic of China. She arrived in the United States in the summer of 2003 and applied for asylum based on her parents' membership in Falun Gong. At her asylum hearing Liu testified that she herself was not a Falun Gong member, but that she had helped her parents distribute materials promoting the group. She said that in June 2003 government officials came to her home, smashed her furniture, and tried to arrest her. Liu said that she escaped to a friend's house and shortly thereafter came to the United States. The IJ did not believe Liu's story and denied her claims. The BIA summarily dismissed her appeal in June 2004, and Liu did not seek further review.

It is unclear from the record why Liu was not then removed to China, but more than two years later, in October 2006, Liu filed a motion to reopen stating that her "personal circumstances [had] changed materially." Liu, who was unmarried, stated that she was five-months' pregnant and that accordingly she risked being forced to abort her pregnancy or undergo forced sterilization if she returned to China.[1] In support of her motion Liu submitted a document that she claims was distributed by her home township's family planning office. The document is entitled "Combine Our Efforts in Thorough Implementation of Family Planning," and states, in relevant part, that as of February 2006 "'[r]enewed efforts at detention (arrest)' should be exerted upon unplanned-birth offenders still at large so far." It also states that "[a]ll firm measures may be taken everywhere to prevent childbirth out of the wedlock." According to the document, those measures include "manual miscarriage" or abortion. Liu argued that this document corroborated her claim that she was entitled to further proceedings "on the ground of changed personal circumstances."

The BIA denied Liu's motion as untimely. It found that her claim did not satisfy the exception to the 90-day deadline because Liu had shown only a change in her personal circumstances, not a change in country conditions. It also stated that the family planning document "does not show a material *change* in coercive enforcement practices since the time of [Liu]'s hearing."

---

[1]Liu gave birth to a son in February 2007.

## Analysis

The BIA may reopen removal proceedings after the 90-day filing deadline has expired only if the applicant submits material evidence of changed country conditions that was not available and could not have been presented at her prior hearing. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); *Lin v. Gonzales*, 435 F.3d 708, 710 (7th Cir. 2006). This court reviews the BIA's denial of a motion to reopen for abuse of discretion only. *Gomes v. Gonzales*, 473 F.3d 746, 752 (7th Cir. 2007). Liu argues that the BIA abused its discretion in deeming her motion untimely because, she says, the family planning document she submitted constitutes material evidence of a change in China's family planning policy. She argues that the document shows that in February 2006 the government began forcing women who violate the policy to undergo forced abortions or sterilization.

Nowhere in her motion to reopen or accompanying affidavit did Liu argue that conditions in China had changed. Instead she specifically sought relief based on her "changed personal circumstances"—namely, her pregnancy. We have held that changed personal circumstances, including the birth of a child in the United States, do not justify the relevant statutory exception to the 90-day filing requirement for motions to reopen. *Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007); *Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005). Perhaps recognizing that barrier, Liu now argues that she is entitled to further proceedings because she submitted evidence of a change in China's enforcement of its family planning policies. But as the government points out, Liu did not argue to the BIA that conditions in China had changed, and thus she has not exhausted her administrative remedies. *See* 8 U.S.C. § 1252(d)(1); *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006). Notably, Liu did not file a reply brief to refute the government's exhaustion argument or to argue that she somehow preserved the issue. *See Margos*, 443 F.3d at 599.

Normally, Liu's failure to exhaust her claim of changed country conditions would mean that this court lacks jurisdiction to consider the new argument she presents here. 8 U.S.C. § 1252(d)(1); *see also Margos*, 443 F.3d at 599*; Hamdan v. Gonzales*, 425 F.3d 1051, 1059 n.14 (7th Cir. 2005). But here the BIA addressed the issue *sua sponte*, stating that the family planning document "does not show a material *change* in coercive enforcement practices since the time of the respondent's hearing," and thus concluding that she did not meet the statutory exception for changed country conditions. Although we have not directly decided whether we retain jurisdiction to review unexhausted claims that the BIA addresses *sua sponte*, the majority of circuits that have addressed the question have held that jurisdiction exists in this situation. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1119-22 (10th Cir. 2007); *Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296-97 (2d Cir. 2006); *Abebe*

*v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005); *cf. Nazarova v. INS*, 171 F.3d 478, 488-89 (7th Cir. 1999) (Manion, J., dissenting) (stating that where the BIA addressed an issue *sua sponte* "it was exhausted to the extent it could be"); *but see Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250-51 (11th Cir. 2006) (holding that the court lacks jurisdiction to review an otherwise unexhausted claim that the BIA addresses *sua sponte*.)

We find that the BIA's decision to address the question of changed country conditions preserves our jurisdiction to review the issue. The purpose of the exhaustion requirement is to give the BIA "the opportunity to apply its specialized knowledge and experience to the matter," *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006), and to afford it the chance "to provide the petitioner the ultimate relief requested in the first instance," *Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004). As the Tenth Circuit recently held, both of these concerns are satisfied when the BIA decides the merits of an issue *sua sponte*. *See Sibutar*, 503 F.3d at 1122 (holding that a "substantive final decision by the BIA on the issues . . . is all that is needed to confer our jurisdiction"). Where, as here, the BIA applied its expertise and exercised its discretion to make a substantive ruling on whether Liu had shown changed country conditions, "it would be bizarre—and decidedly unfair to [Liu]—for us to refuse to review that decision." *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 (9th Cir. 2001) (internal quotation marks and citation omitted). And it is unclear why we should refuse to consider an issue based on a procedural defect—failure to exhaust—that the BIA was willing to overlook. *See Abebe*, 432 F.3d 1041. Accordingly, we find that we have jurisdiction to review the BIA's *sua sponte* finding that Liu had not shown changed country conditions in China.

Turning to the merits, Liu argues that the family planning document she submitted along with her motion to reopen is sufficient to show changed country conditions. But the document on which Liu relies describes persistent—rather than new—conditions. *See Zhao*, 440 F.3d at 407. It shows that local officials were advocating "[r]enewed efforts" in enforcing family planning policies, suggesting that such efforts had been made previously. It further states that "we must never show leniency or softness in 'working at family planning,' nor must we loosen our effort or relax our vigilance to any degree in our thinking; rather, we should consider work at family planning as an ongoing task every year." Nothing in the document announces a new policy or suggests that the coercive tactics it describes had not been used in the past.

Although some courts have held that evidence of new campaigns of forced sterilization—if consistent with government reports describing recent crack-downs—may justify a motion to reopen, *see, e.g., Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1375 (11th Cir. 2007); *Chen v. Gonzales*, 490 F.3d 180, 183 (2d Cir. 2007), Liu

has not pointed to any evidence supporting her argument that the family planning document describes a change in conditions. Her "new" evidence is actually consistent with State Department reports she submitted along with her asylum application. The 2002 Country Report states that in at least one province, "rules state that 'unplanned pregnancies must be aborted immediately.'" The 1998 profile of China asylum applications notes that some local officials under pressure to meet population targets used methods including forced abortions and sterilization to enforce family planning policies. Liu argues that the family planning document shows that the centralized government now condones such tactics, but it is a mandate from a local family planning office that makes no mention of other government authorities. It shows only that—consistent with the earlier State Department reports—local officials advocate coercive methods of enforcing family planning laws. Because the document is insufficient to show a change in conditions in China, the BIA did not abuse its discretion in denying her motion to reopen. *See Zhao*, 440 F.3d at 407. Accordingly, we deny the petition for review.